**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

PAMELA SPENCER,
on behalf of S.J.,

        Plaintiff,

   v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. 1:13-cv-107

Barrett, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Pamela Spencer filed this Social Security appeal in order to challenge the Defendant's finding that her minor daughter, S.J. is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. As explained below, I conclude that the finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On July 27, 2009, Plaintiff filed an application for Supplemental Security Income ("SSI") benefits on behalf of her minor daughter, S.J.; due to depression and behavior problems. (Tr. 56). The Social Security Administration denied S.J.'s claim initially and upon reconsideration. (Tr. 58, 67). Plaintiff then timely requested a hearing before an administrative law judge (ALJ). (Tr. 74). ALJ George Gaffaney conducted a video hearing on June 6, 2011, at which Plaintiff and S.J. testified. (Tr. 32-55). On July 14, 2011, Judge Gaffaney denied S.J.'s SSI application in a written decision. (Tr. 14-30).

In his decision, the ALJ found that S.J's depression was a "severe" impairment, but

it did not meet, medically equal, or functionally equal any listed impairment. (Tr.19). The ALJ further found that S.J. had "less than marked" limitations in her ability to acquire and use information; to attend and complete tasks, to interact and relate to others, and to care for herself. (Tr. 21-24). The ALJ also determined there was no evidence of any limitations in Plaintiff's ability to move about and manipulate objects, and in her health and physical well-being. (Tr. 24, 26). The Appeals Council denied Plaintiff's request to review the ALJ's decision. (Tr. 6-9).

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a

2

reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income by a person under the age of 18, the Social Security Agency is guided by a three-step sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments. *See* 20 C.F.R. §416.924.

In order to meet a Listing, the child's impairment(s) must be substantiated by medical findings shown or described in the listing for that particular impairment. 20 C.F.R. § 416.925(d). (emphasis added). In order to medically equal a Listing, a child's impairment(s) must be substantiated by medical findings at least equal in severity and duration to those shown or described in the listing for that particular impairment. 20 C.F.R. § 416.926(a) (emphasis added).

In order to *functionally equal* a Listing, the child's impairment(s) must be of listing-level severity; i.e., it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a) (emphasis added). The SSA assesses all relevant factors, including (1) how well the child initiates and sustains activities, how much extra help he or she needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) how the child is affected by his or her medications or other treatment. 20 C.F.R. § 416.926a(a)(1)(3). Further, in determining functional equivalence, the SSA considers how a child functions in his or her activities

within six domains:

> (i) Acquiring and using information;
>
> (ii) Attending and completing tasks;
>
> (iii) Interacting and relating with others;
>
> (iv) Moving about and manipulating objects;
>
> (v) Caring for yourself; and,
>
> (vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi).

The Agency defines "marked" and "extreme" limitations as follows:

(2) Marked limitation.

> (i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean

(3) Extreme limitation.

> (i) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. §§ 416.926a(e)(2)(i), (e)(3)(i).

**B. The ALJ's Decision is Supported by Substantial Evidence**

On appeal to this Court, Plaintiff argues that the ALJ erred by: (1) failing to provide a proper analysis of the opinion evidence; and (2) improperly rating the domains when considering whether S.J.'s impairments functionally equal the Listings of Impairments. Upon careful review, the undersigned finds that Plaintiff's assignments of error are not well-taken.

*1. Relevant Record Evidence*

At the time of the hearing, S.J. was a 15 year old female with an 8th grade education with a history of academic and discipline problems in school. (Tr. 37, 144, 188). School records indicate chronic disruptive behavior and refusal to follow instructions. (Tr. 188, 226). School report cards reveal failing grades and problems with attendance. (Tr. 189-191, 277-229). School records also reveal that S.J. had to repeat the 8th grade. (Tr. 152). In September 2010, due to her continued discipline problems at school, S.J. began on-line classes at the Ohio Virtual Academy. (Tr. 199-224).

Two of S.J.'s teachers completed questionnaires in support of her application for benefits. (Tr. 144-153, 192-198). Both teachers rated as S.J. as having "serious" or very serious problems in all of the domains of functioning. (Tr. 144-153, 192-198).

With respect to her depression, in March 2009, a clinician from Beech Acres examined S.J., at the request of the SBS Coordinator for Carson Elementary School, Tracy Alexander. (Tr. 339). After the initial diagnostic assessment, Plaintiff was diagnosed with depression and therapy services were recommended. (Tr. 349). S.J. ultimately treated at Beech Acres, with Dr. Joseph Cresci from March through December 2009. (Tr. 231-247,

5

337-357).

In June 2009, Dr. Cresci diagnosed S.J. with depressive disorder and assigned a GAF of 40. (Tr. 233-234). Dr. Cresci observed that S.J. was very lonely and chronically depressed. Dr. Cresci further noted that S.J. had to deal with her mother's chronic anger and the resulting poor relationship with her mother. *Id.* Dr. Cresci reported that S.J. was very withdrawn, depressed, rude, and argumentative during her follow-up visits.

In December 2009, Dr. Cresci noted that Plaintiff did not present as depressed and further noted that her mother reported that she was being more helpful around the house and arguing less. (Tr. 352).

In April 2010, treatment notes from Children's Hospital indicate that SJ was motivated to find a job, engaged well throughout the session and appeared stable. (Tr. 359-60).

The record also contains treatment notes from St. Aloysius Orphanage where S.J. treated from August 2010 through 2011. (Tr. 425-435, 436-442). In April 2011, Dr. Vu, a psychiatrist at St. Aloysius, noted that Plaintiff had not met the criteria for major depressive disorder since her initial evaluation. (Tr. 438). Treatment notes further indicate that SJ was prescribed Celexa, but Dr. Vu later discontinued it after SJ reported that she was not taking it. Dr. Vu noted that SJ's symptoms seemed morel likely related to "relational conflicts with her mother and part of adolescence" rather "than pathological." (Tr. 438). Dr. Vu also noted that SJ had normal intelligence, attention, concentration and memory.

The record also contains the opinions of the state agency non-examining consultants' from November 2009 and April 2010. (Tr. 331-36, 419-424 ). Both consultants determined that Plaintiff had marked limitations in the domain of interacting and

relating to others and less than marked or no limitations in the remaining domains. (Tr. 333, 421).

Plaintiff's assignments of error both relate to the ALJ's evaluation of the domains functioning. Plaintiff first contends that the ALJ did not clearly explain the basis for his opinion. Specifically, Plaintiff claims that the ALJ did not provide an explanation for why he did not accept the opinions of the state agency non-examining consultants' opinions that Plaintiff had marked limitations in the domain of interacting and relating to others. (Doc. 8). Plaintiff also argues that the ALJ failed to properly consider the opinions of the teachers about SJ limitations. Plaintiff further claims that the ALJ's findings related to the remaining domains are not substantially supported. Plaintiff's contentions will be addressed in turn.

> a. *The ALJ reasonably found that Plaintiff has "less than marked" limitations in the domain of interacting and relating with others.*

Plaintiff claims that the ALJ's decision should be reversed because he failed to mention the findings of the non-examining state agency physicians. As noted above, the non examining physicians in this case rated S.J. as having "marked" limitations in the domain of "interacting and relating with others." (Tr. 333, 421). The ALJ, however, determined that S.J. has only "less than marked" limitations in that domain. (Tr. 24). In so concluding, the ALJ did not explicitly mention the findings of the state agency physicians with respect to this domain. Such an omission, however, does not require reversal.

The Sixth Circuit repeatedly has held that an ALJ is not required to explicitly discuss "every single piece of evidence submitted by a party." *Kornecky v. Com'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) (quoting *Loral Defense Systems- Akron v. N.L.R.B* ., 200 F.3d 326, 453 (6th Cir.1999)) (citations and internal quotation marks omitted). Here,

while the ALJ may not have explicitly mentioned the assessments of the state agency physicians in his evaluation of the domain of "interacting and relating with others," he did note such evidence in his evaluation of the third domain: interacting and relating with others. (See Tr. 25). Thus, the record indicates that the ALJ did, in fact, review the findings from the state agency physicians.

Furthermore, as noted by the Commissioner, such an omission, at most, is harmless error. *See Shinseki v. Sanders*, 556 U.S. 396, 129 S. Ct. 1696, 1706 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 657-61 (6th Cir. 2009) (finding harmless an ALJ's error that did not prejudice the Plaintiff); *see also N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969) (when "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game"). These consultants opined that Plaintiff had marked limitations in only one domain, interacting and relating to others, but opined that Plaintiff did not functionally equal a listing, which is consistent with the ALJ's ultimate finding that Plaintiff was not disabled. (Tr. 26, 331-36, 419-24). As stated above, in order to be found functionally equivalent to a listed impairment, a child must have "marked" limitations in two domains or an "extreme" limitation in one domain. See 20 C.F.R. § 416.926a(d). Thus, even had the ALJ agreed with these consultants' opinions regarding this one domain, Plaintiff's impairment still would not have been functionally equivalent to a listed impairment.

Next, Plaintiff claims that the ALJ improperly relied on the treatment notes from Dr. Vu at the St. Aloysius Orphanage. Specifically, Plaintiff argues that ALJ improperly relied on Dr. Vu's treatment notes because he saw her only on two occasions; and further argues

8

that he failed to consider the therapy and psychiatry notes from 2009 and 2010. (Pl.'s Br. at 11). Contrary to Plaintiff's assertion, the ALJ's decision reveals that he not only considered the recent treatment notes of Dr. Vu dated in 2011, but also Plaintiff's treatment records from 2009 and 2010. (Tr. 24, 231-47, 337-57, 425-42). The ALJ noted that Plaintiff had a history of behavioral issues and relating to her peers and educators (Tr. 24, 144-58, 231-47, 337-57, 436-42). The ALJ further noted that SJ has a court ordered curfew do to staying out too late. The ALJ then noted evidence, which showed Plaintiff was improving in her relationships with others. (Tr. 24). The ALJ also found SJ's strained relationship with her mother had recently improved. The ALJ also noted that Plaintiff testified that she has a best friend and spends time with her siblings and friends outside her home. The ALJ also cited to SJ's testimony that she has a good relationship with her father and also babysits for neighborhood children.

Additionally, the fact that Dr. Vu had seen Plaintiff on only two occasions, standing alone, is not a proper basis to discredit his findings. See *Blankenship v. Bowen*, 874 F.2d 1116, 1121, (6th Cir.1989) (finding no cause existed to question the diagnosis of a psychiatrist made after only one interview and where no psychological testing had been conducted and even though the doctor noted the need for a more accurate history).

Last, Plaintiff contends that the ALJ's erred in failing to credit the findings contained in the teacher questionnaires. However, as noted by the Commissioner, teachers are not an acceptable medical source and thus their opinions are not entitled to any special weight or consideration. *See* 20 C.F.R. § 416.913(d). In any event, the ALJ's decision revealed that he did consider the teachers' opinions; however, he found the opinions of the treating physicians more persuasive. (Tr. 21-26, 144-58, 192-96, 337-57, 425-42). *See* 20 C.F.R.

§ 416.927(d)(2) (the ALJ must afford a treating physician's opinion substantial weight unless good cause is shown otherwise).

In light of the foregoing, the undersigned finds that the ALJ provided sufficient analysis in support of his determination that Plaintiff did not have marked limitations interacting and relating with others, and that such determination is substantially supported by the record as detailed above.

> *b. The ALJ properly evaluated Plaintiff's functioning in the domains of acquiring and using information and attending and completing tasks.*

Plaintiff also argues that the ALJ erred in finding she only had "less than marked" limitations in the domain of acquiring and using information. In support of her argument she cites to her school records and the teacher questionnaires. However, as noted above, the ALJ was not required to credit such findings. Despite this, the ALJ's decision indicates that he properly considered this information, yet found it only supported less than marked limitations. (Tr. 22). Notably, the ALJ pointed to Plaintiff's testimony that she was able to use public transportation, go shopping and go to the library by herself. (Tr. 22, 41). The ALJ further noted that treatment notes from Cincinnati Children's Hospital revealed that Plaintiff was motivated to find a job. (Tr. 22, 315). Notably, the record indicates that Plaintiff completed job applications by herself and with her mother's assistance. (Tr. 22,46). The ALJ noted that although Plaintiff continued to struggle with academics, Dr. Joseph Cresci observed that Plaintiff was able to write a paragraph, which was well organized with good spelling and accurate punctuation and syntax. (Tr. 22, 199-224). Furthermore, the teacher questionnaire completed by Lawanda Kenny indicates that she was at grade level in reading and math. (Tr. 144). Thus, based on this evidence, the ALJ properly determined Plaintiff

had less than marked limitations in this area. (Tr. 22).

Plaintiff also argues that the ALJ erred in finding she had less than marked limitations in the domain of attending and completing tasks. Plaintiff asserts that she had continued problems with attention and concentration. Upon careful review, however, the undersigned finds that the ALJ reasonably concluded that Plaintiff only had less than marked limitations in this domain. (Tr. 23). The ALJ noted that Plaintiff was unable to finish what she started. (Tr. 23, 115-25). The ALJ also properly considered the teachers' questionnaires that revealed Plaintiff had difficulty focusing on academics, and the fact that Plaintiff struggled to grasp academic concepts, to which her mother attributed her poor grades. (Tr. 23, 52, 115-25, 136-58, 192-98). The ALJ's decision indicates that he considered that Plaintiff was able to do household chores, including cleaning her room and bathroom, washing her clothes, and washing dishes. (Tr. 23, 40). In light of the foregoing, the undersigned finds that the ALJ reasonably concluded that Plaintiff had less than marked limitations in the domain of attending and completing tasks. (Tr. 23).

In sum, the undersigned agrees that the ALJ's explicit discussion of the domains might have benefitted from greater detail concerning the discrete pieces of evidence on which Plaintiff relies. However, even if he did not specifically distinguish each and every snippet of evidence that might support a greater limitation, the ALJ provided sufficient discussion for this Court to review, understand, and affirm his decision as supported by substantial evidence. Thus, Plaintiff demonstrates no reversible error.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

                                               *s/Stephanie K. Bowman*
                                               Stephanie K. Bowman
                                               United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| PAMELA SPENCER, on behalf of S.J., | Case No. 1:13-cv-107 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).